# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE BLACK & DECKER CORPORATION, ) <br> BLACK & DECKER INC., ) <br> BLACK & DECKER (U.S.) INC., ) <br> EMHART CORPORATION, and ) <br> EMHART INDUSTRIES, INC. ) <br> ) <br> Defendants. ) | CIVIL ACTION <br> No. 96-10804-DPW |

BLACK & DECKER'S SUPPLEMENTAL SUBMISSION REGARDING
ISSUES CONCERNING LONG-TERM EXPOSURE CLAIMS
RAISED DURING THE DECEMBER 18, 1998 HEARING

INTRODUCTION

During the December 18 hearing concerning the Long-Term Exposure Claims, there was consideration of whether any forbearance by Liberty Mutual constituted consideration for a possible cost sharing agreement with respect to the Mississippi Hearing Loss Claim, whether Black & Decker's outside counsel agreed to alleged cost-sharing agreements and the calculation of the defense costs at issue.  The Court requested further submissions.

Black & Decker is filing herewith affidavits of Richard P. Kidwell and John Parker Sweeney, Black & Decker's outside counsel, and of M. Clayton Roop of Black & Decker

(listing, _inter alia_, Black & Decker's unreimbursed defense costs through November 30, 1998).

Those affidavits establish the following:

- Mr. Kidwell did not agree to the purported cost-sharing agreement concerning the Mississippi Hearing Loss Claim and would not have recommended an agreement containing the provisions in the purported agreement signed by Mr. Schlemmer.

- Mr. Schlemmer claims he had a conversation with Mr. Kidwell concerning the Mississippi Hearing Loss Claim a year after Mr. Kidwell left Miles & Stockbridge for employment with Johns Hopkins University.

- The parties did not perform in accordance with the purported cost sharing agreement concerning the Mississippi Hearing Loss Claim as not a single insurer paid the amounts that would have been required under the purported agreement when requested to do so by ESIS.

- There is no writing purporting to confirm an agreement concerning the Mississippi Hand/Arm Vibration Claim.

- Mr. Sweeney did not discuss cost-sharing issues with Mr. Schlemmer, much less agree to the purported agreement concerning the Mississippi Hand/Arm Vibration Claim.

- Neither Liberty Mutual nor any insurer made any payment for Black & Decker's defense costs in the Mississippi Hand/Arm Vibration Claim.

Further, the purported forbearance by Liberty Mutual was not consideration. Maryland has "adopt[ed] the rule stated by the American Law Institute that forbearance to assert an

invalid claim by a person who has not an honest and reasonable belief in its possible validity is not sufficient consideration for a contract of forbearance". <u>Snyder</u> v. <u>Cearfoss</u>, 187 Md. 635, 643, 51 A.2d 264, 268 (1947); <u>Jacobs</u> v. <u>Atlantco Limited Partnership No. 1</u>, 36 Md. App. 335, 343, 373 A.2d 1255, 1259 (1977).

Even if a valid contract had been formed, Liberty Mutual repudiated that contract in January, 1996 by filing a complaint in this action in which it sought a declaration that it had no duty to defend the Mississippi Hearing Loss Claim and the Mississippi Hand/Arm Vibration Claim.

ARGUMENT

A.    There Was No Agreement Concerning
      The Mississippi Hearing Loss Claim

1.    Black & Decker's Outside
      Counsel did not agree

Mr. Kidwell states that he did not enter into the purported cost-sharing agreement concerning the Mississippi Hearing Loss Claim (Kidwell Aff., attached as Exhibit 1, ¶ 3). He had neither actual nor apparent authority to enter into such an agreement (<u>Id.</u>, ¶ 4). Mr. Kidwell advised Mr. Schlemmer that any potential cost-sharing agreement would have to be in writing and executed by a duly authorized representative of Black & Decker (<u>Id.</u>, ¶ 3). Mr. Kidwell also stated that he would review

any proposed agreement and, thereafter, present it to Black &
Decker with his recommendation as to whether or not Black &
Decker should execute the agreement. (Id., ¶ 3). Mr. Kidwell
would not have recommended that Black & Decker execute an
agreement in the form of Schlemmer Exhibit D (Id., ¶ 7). He
would have recommended against executing that document since it
purported to make Black & Decker responsible for defense costs
allocable to the period 1964-1970 despite Liberty Mutual having
issued insurance policies to Black & Decker covering that period
(Id., ¶¶ 5-6). That unreasonable allocation was compounded by
the document purporting to make allocations final (Id. ¶ 7).

                    2.   Forbearance By Liberty Mutual
                         Was Not Valid Consideration

          In a letter dated March 3, 1992 (App. XXVII:055),
Liberty Mutual agreed to defend the Mississippi Hearing Loss
Claim. In view of that letter and Liberty Mutual's recognition
that the claim was within the scope of, at a minimum, the
policies it issued to Black & Decker during 1970-79, its
forbearance from contesting its obligation to defend that claim
is not consideration for an agreement limiting its defense
obligation to paying 37.5% (or three-eighths) of defense costs.
A 37.5% share is the amount allocable to the nine years of
admitted Liberty Mutual coverage, with each year representing
4.17% of the 24 year exposure period, 1964-1988 (See Roop Aff.

                              -4-

Ex. E, a letter from an insurer noting that one year of coverage represents a 4.17% share of defense costs). Thus, the allocation for Liberty Mutual did not include any payment for the contested period 1964-1970 in which there was overwhelming evidence that Liberty Mutual insured Black & Decker (See Kidwell Aff., ¶¶ 5-6 and the attached correspondence, as well as the certififcates of insurance and other extensive evidence concerning the existence of those policies discussed in the Black & Decker initial summary judgment brief).

As noted above, Snyder and Jacobs hold that Maryland recognizes an exception to the rule that forbearance from asserting a claim is consideration. The exception applies when the party that forbears lacks an honest and reasonable belief that the putative claim is viable and that said claim may be asserted in good faith. After announcing that rule, the Snyder and Jacobs courts explained:

> We thus combine the requisite that the claim be made in good faith with the requisite that it must be reasonably doubtful. While emphasis is placed on the honesty and good faith of the claimant, forbearance is insufficient consideration of [sic – if] the claim forborne is so lacking in foundation as to make its assertion incompatible with honesty and a reasonable degree of intelligence.

Snyder, 187 Md. at 643, 51 A.2d at 268; Jacobs, 36 Md. App. at
343, 373 A.2d at 1259.

Here, the only evidence as to whether Liberty Mutual
had an honest and good faith belief in a putative claim is its
acknowledgement of its duty to defend based upon the 1970-1979
policies that it issued to Black & Decker.  That acknowledgement
occurred prior to any discussion concerning a possible cost-
sharing agreement.  The purported agreement imposed no
obligation on Liberty Mutual beyond paying the percentage of
costs attributable to those policies.  The detailed Schlemmer
affidavit does not assert that Liberty Mutual had a good faith
basis for a putative claim that it had no duty to defend Black &
Decker under the 1970-1979 policies.  Also, throughout the
course of proceedings on the summary judgment motions Liberty
Mutual has admitted that it has a duty to defend.

Thus, Liberty Mutual's forbearance from denying its
duty to pay the defense costs allocable to the period in which
it admits that it owed a defense obligation is not consideration
as a matter of law.  As stated in Snyder, "[i]t is
unquestionably true that a mere promise not to prosecute a claim
which is not founded in good faith" does not constitute
forbearance.  187 Md. at 643, 51 A.2d at 267.  Thus, under

-6-

Maryland law, "a release from mere annoyance and unfounded litigation does not furnish valuable consideration."  Id.

Any Liberty Mutual argument that it provided consideration is further undercut by the legal principle that an insurer is obligated to defend the entire claim even if part of the claim occurred in a period in which it did not provide insurance.[1]  E.g., Rubenstein v. Royal Insurance Co., 44 Mass. App. Ct. 842 (1988); Monsanto Co. v. C. E. Heath Compensation and Liability Insurance Co., 652 A.2d 30, 34 & n. 6 (Del. 1994). See also Keene Corp. v. Insurance Company of America, 667 F.2d 1034, 1052 (D.C. Cir. 1981), cert. denied, 455 U.S. 1007 (1982). Similarly, Maryland views a liability policy as "litigation insurance". and requires the insurer to provide a complete defense of the insured.  Brohawn v. Transamerica Insurance Co., 347 A.2d 842, 852 (Md. 1975).  That is true even when the defense also benefits an uninsured party.  Federal Realty Investment Trust v. Pacific Insurance Co., 760 F.Supp. 533, 535-38 (D. Md. 1991).

Even if Liberty Mutual were able to assert a basis for denying its duty to defend, it would not be entitled to judgment in its favor on the "consideration" issue.  Whether Liberty

---

[1]    In view of the secondary evidence, including certificates of insurance, that Liberty Mutual insured Black & Decker during 1964-1970, there should have been no basis for the purported belief that Black & Decker was not insured by Liberty Mutual during 1964-1970.

Mutual had an honest and good faith intention to assert the purported claim is an issue of fact.  The factual nature of this inquiry was explained in Jacobs[2]:

> There was little if any conflict in the direct evidence, but the inferences to be drawn from the evidence were both disputed and controverted.  The Chancellor found that Atlantco's position on each question was based upon honest belief, and was taken in good faith.  The measure of our inquiry on appeal is whether the evidence was sufficient [to] support those findings…  The regard which we must give to the opportunity of the lower court to judge the credibility of the witnesses can be of critical importance when the findings relate to intent, or a state of mind, and necessarily are arrived at largely through a process of inference.

36 Md. App. at 345-46, 373 A.2d at 1260.

Similarly, in Snyder, the court held that the lower court erred in ruling, as a matter of law, that the validity of forbearance as consideration had not been established.  The Court noted the existence of "facts sufficient for the jury to determine whether the sisters had an honest and reasonable belief in the possible validity of a claim against the estate of

---

[2]    In Jacobs the alleged consideration was forbearance from asserting a claim that a judicial decree did not constitute a cloud on title.  There, the plaintiff was paid $25,000 for forbearing from asserting a claim that the purchaser was required to proceed in accordance with a purchase and sale agreement because the judicial decree did not constitute a cloud on title that prevented performance of the purchase and sale agreement.

their brother". 187 Md. at 644, 51 A.2d at 268. Here, there is
no basis for deciding the fact issue in favor of Liberty Mutual
as a matter of law.

### B. There Was No Performance Of The Purported Contract

The insurers who were parties to the purported cost-
sharing agreement concerning the Mississippi Hearing Loss Claim
did not perform in accordance with that agreement. The
purported agreement, Schlemmer Exhibit D, provided for the
following "Contribution Percentages":

| | |
|---|---|
| Black & Decker: | 33.5% |
| Liberty Mutual | 37.5% |
| Home: | 12.5% |
| London Insurers: | 12.5% |
| Twin Cities: | 4.0% |

ESIS, the claims administrator, made three
unsuccessful requests that the insurers pay the "Contribution
Percentages" stated in the purported agreement to reimburse ESIS
for defense costs that ESIS paid through December, 1993 (Roop.
Aff., attached as Exhibit 2, ¶¶ 5-7, Exs. B-D). These requests
were made in letters dated September 14, 1992, June 18, 1993,
and December 28, 1993 (Id.). London Insurers, which had a
"Contribution Percentage" of 12.5%, made no payments (Roop
Aff., ¶ 8). London Insurers had apparently declined to
participate in the purported agreement as ESIS did not request
payment from London Insurers in its billing letters of June 18,

-9-

1993 and December 28, 1993[3] (Roop Aff., ¶¶ 6-7, Exs.6-7).  Home

Insurance Company, which also had a "Contribution Percentage" of

12.5%, declined to pay more than 4.17% (Roop Aff., ¶ 12, Ex. E).

The other two insurers, Twin Cities and Liberty Mutual, paid

less than the amount requested by ESIS (Roop Aff., ¶ 8).  The

difference between the amounts payable by the insurers as

reimbursement for the payments made by ESIS under the purported

"agreement" and the amount the insurers actually paid is as

follows:

| Insurer | Percentage | Amt. Payable | Amt. Paid to ESIS |
|---------|-----------|--------------|-------------------|
| Liberty | 37.5% | $163,448.35 | $158,214 |
| Home/Hartford | 12.5% | $ 54,482.80 | $  9,546 |
| London Insurers | 12.5% | $ 54,482.80 | 0 |
| Twin Cities | 4.0% | $ 18,461.32 | $14,022 |

(Roop Aff., ¶ 8, Ex. A).

The futility of collecting payments from the insurers

became manifest following the December 28, 1993 letter.

Thereafter, ESIS stopped seeking reimbursement from the

insurers.  Instead ESIS sought reimbursement only from Black &

Decker (Roop Aff., ¶ 11).  Following the December 28, 1993

letter from ESIS, Black & Decker continued to incur unreimbursed

defense costs in the Mississippi Hearing Loss Claim (Roop Aff.,

¶ 10).  Its total unreimbursed defense costs in connection with

---

[3]      The ESIS billing letter of September 2, 1992 mentions a need to
"resolv[e] the London insurer's solvency problem".

-10-

the Mississippi Hearing Loss Claim are $1,583,000 (Roop Aff., ¶ 15, Ex. A).

Liberty Mutual, recognizing that Black & Decker continued to incur defense costs after December 28, 1993, has addressed this problem with a demonstrably false statement in paragraph 33 of the Schlemmer affidavit. Schlemmer asserts that he had a conversation with Richard Kidwell of Miles & Stockbridge about the status of defense invoices in "late 1994 or early 1995". No such conversation could have taken place at that time as Mr. Kidwell has been employed by Johns Hopkins Health System, not Miles & Stockbridge, continuously since January 4, 1994 (Kidwell Aff., ¶ 9). Paragraph 8 of Mr. Kidwell's affidavit states:

> The following statement in paragraph 33 of the Schlemmer affidavit is false:
>
> "In late 1994 or early 1995, I contacted Richard Kidwell of Miles & Stockbridge, Black & Decker's counsel, to determine why we had not received any bills for incurred costs, pursuant to the cost-sharing agreement. Mr. Kidwell informed me that if there were any more bills which needed to be paid, we would be so informed; otherwise, Liberty Mutual's obligations pursuant to the cost-sharing agreement would be complete."

In paragraph 9 of his affidavit, Mr. Kidwell explains:

> I had no conversations with Mr. Schlemmer during the period "late

-11-

1994 or early 1995". I have been
employed by Johns Hopkins Health
Systems, not Miles & Stockbridge,
continuously since January 4, 1994 and
did not represent Black & Decker during
that period. I never spoke with Mr.
Schlemmer during the course of my
employment at Johns Hopkins Health
Systems.

The record establishes that the insurers were in

substantial breach of their obligations under the purported

contract by December 31, 1993, thus relieving Black & Decker of

any obligation that otherwise would have limited its right to

receive a full defense from its insurers.

> C. There Is No Evidence Of A Cost
> Sharing Agreement Concerning The
> Mississippi Hand/Arm Vibration Claim

The Liberty Mutual argument that the purported

Mississippi Hearing Loss Claim agreement was extended to the

Mississippi Hand/Arm Vibration Claim is expressly contradicted

by the Sweeney and Roop affidavits. Further, the notion that

the "agreement" would have been extended to include the

Mississippi Hand/Arm Vibration Claim is illogical as the

insurers had failed to perform in accordance with the Hearing

Loss "agreement" prior to the time that Black & Decker provided

Liberty Mutual notice of the Hand/Arm Vibration Claim.

The Schlemmer affidavit does not refer to any

documents supporting the existence of the purported agreement

-12-

concerning the Mississippi Hand/Arm Vibration Claim.    While
Liberty Mutual submitted draft agreements and correspondence
transmitting invoices for payment pursuant to the purported
agreement with respect to the Mississippi Hearing Loss Claim, it
provided no such documentation concerning the Mississippi
Hand/Arm Vibration Claim.

Liberty Mutual relies solely on Mr. Schlemmer's
assertion that John Parker Sweeney of Miles & Stockbridge, Black
& Decker's outside counsel, and unidentified members of the
Black & Decker risk management staff agreed to the purported
arrangement during a "joint defense" meeting (Schlemmer Aff.,
¶¶ 34-38, particularly ¶ 35).    Mr. Sweeney flatly contradicts
the Schlemmer assertion (Sweeney Aff., attached as Exhibit 3,
¶¶ 5-7).    As explained by Mr. Sweeney, the "joint defense
meetings" referred to by Mr. Schlemmer were meetings of the
numerous defendants in that action to discuss issues of strategy
common to the defendants who were represented at the meetings,
not issues relating solely to Black & Decker (Id., ¶¶ 5-6).    The
subject matter of a cost-sharing agreement was never discussed
in Mr. Sweeney's presence (Id., ¶ 7).    Mr. Schlemmer attended
those meetings on behalf of a defendant other than Black &
Decker; that defendant was a Liberty Mutual insured.    (Sweeney
Aff. ¶ 6).    Mr. Sweeney, who represented Black & Decker in the

-13-

defense of the underlying claims, but not with respect to insurance coverage issues, had neither actual nor apparent authority to enter into the purported agreement on Black & Decker's behalf (Id., ¶ 8).

Mr. Schlemmer's assertion that "Liberty Mutual made payments toward the incurred defense costs for the Mississippi Hand/Arm Vibration Claim" (Schlemmer Aff., ¶ 38) is contradicted by business records (Roop Aff., ¶ 18). Based on a review of those records, Mr. Roop states that Black & Decker received no payments for defense costs for the Mississippi Hand/Arm Vibration Claim from Liberty Mutual or any insurer (Roop Aff., ¶ 18). It is worthy of note that while Mr. Schlemmer stated the specific amount that Liberty Mutual paid toward defense costs in the Mississippi Hearing Loss Claim, $158,214.04 (Schlemmer Aff., ¶ 20), an amount which Mr. Roop acknowledges was paid by Liberty Mutual (Roop Aff., ¶ 14 and Ex. A), Mr. Schlemmer does not state the amount that Liberty Mutual purportedly paid with respect to the Mississippi Hand/Arm Vibration Claim.

While Liberty Mutual has proffered no documentation concerning the purported extension of the Mississippi Hearing Loss Claim "agreement", there is a document indicating the absence of such an agreement (Roop Aff., ¶20, Ex. F). On September 13, 1994, in response to an inquiry from Home

-14-

Insurance Company, Gordon Clifford of ESIS responded "[a]s to the cost sharing arrangement on the vibration claims if any, I am still awaiting word from Black & Decker's corporate counsel, Miles & Stockbridge" (Roop Aff., Ex. F). There is no suggestion that any subsequent document referred to the existence of any such agreement.

In view of the non-performance under the purported Mississippi Hearing Loss Claim agreement, it is preposterous to assume that Black & Decker would have agreed to extend that purported agreement to another long-term exposure claim. Black & Decker provided Liberty Mutual with notice of the Mississippi Hand/Arm Vibration Claim by February 1994 (App. XXVII:24). By that time, two insurers, whose combined "Contribution Percentages" in the purported Mississippi Hearing Loss Claim Agreement aggregated 25%, had refused to pay more than a total of 4.17%. These insurers had failed to pay the invoices submitted to them by ESIS. The other two insurers had paid less than the amount requested by ESIS (see chart on p. 8, supra).

The notion of a purported agreement with the same insurers in those circumstances would be even more illogical if the purported agreement were to provide that payments would be final and not subject to reallocation. Section IX of Schlemmer Exhibit D contains the provision upon which Liberty Mutual

-15-

relies in support of its argument for finality.  Black & Decker,
which was entitled to have its entire defense cost paid by any
insurer who provided coverage during a portion of the exposure
period and which knew that Liberty Mutual had provided coverage
during most of the exposure period, would not have agreed
irrevocably to limit its rights against Liberty Mutual to 37.5%
of its defense costs, a figure that does not even take into
account the policies that Liberty Mutual issued to Black &
Decker during 1964-1970.  Had the parties entered into an
enforceable pro rata cost-sharing agreement which took into
account the 1964-1970 policies, Liberty Mutual's defense
obligation would have increased to over 70%.

        As of November 30, 1998, the total amount that Black &
Decker had paid for defense costs in the Mississippi Hand/Arm
Vibration Claim was $441,732 and Black & Decker is continuing to
incur defense costs in the Mississippi Hand/Arm Vibration Claim
(Roop Aff. ¶ 19, Ex. A).

        D.    Liberty Mutual Repudiated
              the Purported Contracts

        When Liberty Mutual filed its original complaint on
January 2, 1996, it sought a declaratory judgment that it had no
duty to provide coverage with respect to, inter alia, the
Mississippi Hearing Loss and the Mississippi Hand/Arm Vibration
Claims (Count II, ¶¶ 130-132; see also ¶¶ 118-125).  That

-16-

conduct was inconsistent with its obligations under the purported cost-sharing agreements and, accordingly, amounts to repudiation of the purported contracts. E.g., Weiss v. Sheet Metal Fabricators Corp., 206 Md. 195, 203-204, 110 A.2d 671, 675 (1955) ("when 'in anticipation of the time of performance one definitely and specifically refuses to do something which he is obligated to do, so that it amounts to a refusal to go on with the contract, it may be treated as a breach by anticipation, and the other party may, at his election, treat the contract as abandoned, and act accordingly'" (quoting Friedman v. Katzner, 139 Md. 195, 201, 114 A. 884, 887 (1921)).

Black & Decker, by filing a counterclaim concerning the obligation of Liberty Mutual with respect to the Mississippi Hearing Loss Claims, elected, pursuant to Weiss, to respond to the repudiation by "treat[ing] the contract as abandoned and act[ing] accordingly". E.g., Stefanowicz Corp. v. Harris, 36 Md. App. 136, 147-150, 373 A.2d 54, 61-63 (1977)(Maryland follows the general rule that after a repudiation, the innocent party need not specifically accept the repudiation and the innocent party's cessation of performance is sufficient to treat the other party's conduct as repudiation). See also Washington Homes, Inc. v. Interstate Land Development Corp., 281 Md. 712,

726-730, 382 A.2d 555, 562-564 (1978) (following repudiation, innocent party entitled to rescind contract).

Thus, Black & Decker may rely on its rights prior to the purported contracts, including its right to insist that Liberty Mutual provide a full and complete defense.

### E. The Arkansas Hearing Loss Claim

The Schlemmer affidavit admits that Liberty Mutual is responsible for the portion of defense costs in the Arkansas Hearing Loss Claim that was originally assigned to Black & Decker (Schlemmer Aff., ¶¶ 12-15; see also Roop Aff., ¶ 24, Exs. H, I). Liberty Mutual had professed an inability to find the policies it issued to Farrel during the period 1964-1971 (Schlemmer Aff., ¶ 12) and the costs assigned to that period, 27% of the total cost, were initially allocated to Black & Decker as the coverage for that period was purportedly "undocumented" (Roop Aff., ¶¶ 21-22, Ex, G). Liberty Mutual subsequently admitted that it had copies of its policies covering the entire "undocumented" period (Schlemmer Aff., ¶¶ 13, 15). A salutary effect of the Court's September 24, 1996 order to produce all applicable policies was that Liberty Mutual was able to find the pertinent policies (Id., ¶ 15).

There is no argument that Black & Decker was uninsured for any part of the exposure period. Liberty Mutual admits that

-18-

it is responsible for the 27% of defense costs originally "assigned" to Black & Decker, resulting in Liberty Mutual having a 44% share, with the remaining 56% divided among other insurers (See Schlemmer Aff., Ex. B, Roop Aff., ¶¶ 21-22, Ex. G).  The document upon which Liberty Mutual relies (Schlemmer Aff. Ex. B[4]) does not purport to render allocations final.  Rather, it expressly provides that "if we are able to document the coverage at a later date, the defense costs can be reallocated and reimbursements made at that time".  Liberty Mutual even contemporaneously admitted that its share of defense costs had increased when it "found" some policies that it previously denied existed (See the letters from Liberty Mutual that are Exhibits H and I to the Roop Affidavit).

Nothing remains other than an accounting.  The accounting will calculate the 44% share that Liberty Mutual admits it owes, plus the amount unpaid by other insurers. Liberty Mutual is liable to Black & Decker for these amounts, with the right to obtain contribution from other insurers. Rubenstein v. Royal Insurance Co., 44 Mass. App. Ct. 842 (1988); Monsanto Co. v. C. E. Heath Compensation and Liability Insurance Co., 652 A.2d 30, 34 & n. 6 (Del. 1994).  See also Keene Corp.

---

[4]     Exhibit B to the Schlemmer affidavit and Exhibit G to the Roop affidavit are copies of the same document.

v. Insurance Company of America, 667 F.2d 1034, 1052 (D.C. Cir. 1981), cert. denied, 455 U.S. 1007 (1982); Brohawn v. Transamerica Insurance Co., 347 A.2d 842, 852 (Md. 1975); Federal Realty Investment Trust v. Pacific Insurance Co., 760 F.Supp. 533, 535-38 (D. Md. 1991).

The Arkansas Hearing Loss Claim was resolved in favor of Black & Decker. Black & Decker's unreimbursed expenses in connection with that action are $744,646 (Roop Aff. ¶ 27, Ex. A).

CONCLUSION

The Court should enter an order that Liberty Mutual is liable for all unreimbursed defense costs incurred by Black & Decker in the Long-Term Exposure Claims.

Respectfully submitted,

Jack R. Pirozzolo, BBO# 400400
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail-hand on ___1/12/99___