# EXHIBIT W

Volume:  I
Pages: 122
Exhibits: 5

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

LIBERTY MUTUAL INSURANCE
COMPANY,

                              Plaintiff

          vs.                          Docket No.
                                       96-10804-DPW

THE BLACK & DECKER CORPORATION,
BLACK & DECKER, iNC., BLACK &
DECKER (U.S.), INC., EMHART
CORPORATION and EMHART, INC.,
                              Defendants

          DEPOSITION of JOHN PARKER SWEENEY, a
witness called by and on behalf of the Plaintiff,
taken pursuant to the Federal Rules of Civil
Procedure, before Cynthia F. Stutz, Court Reporter
and Notary Public in and for the Commonwealth of
Massachusetts, at the offices of Holland & Knight,
LLP, 10 St. James Avenue, Boston, Massachusetts, on
Wednesday, April 18, 2001, commencing at 9:09 a.m.

RECEIVED
APR 30 2001
Willcox, Pirozzolo & McCarthy

HENNESSEY CORP. d/b/a ROBERT H. LANGE COMPANY
50 Congress Street
Boston, Massachusetts 02109
(617) 523-1874

1    deposition?

2    A.    Mostly to familiarize myself with the give

3    and take of questioning in this case, the kinds of

4    issues that counsel were exploring.

5    Q.    Have you ever met Mr. Schlemmer before?

6    A.    Yes.

7    Q.    On how many occasions have you met Mr.

8    Schlemmer?

9    A.    I can't say how many times.

10    Q.    Do you recall the circumstances of you

11    meeting Mr. Schlemmer?

12    A.    I first met him in connection with

13    meetings of the oversight committee for the

14    Mississippi Hearing Loss cases that were held in

15    New Orleans.  I believe that would have been late

16    1992 or early 1993.

17    Q.    Do you recall when it was that you next

18    met Mr. Schlemmer after that?

19    A.    I probably met him at two or three of

20    those meetings.

21    Q.    And when you say two or three of those

22    meetings, those would be meetings of the oversight

23    committee for the Mississippi Hearing Loss

24    litigation?

1      A.    Meetings that were held in New Orleans,

2    yes.

3      Q.    Other than meetings in connection with

4    that oversight committee for the Mississippi

5    Hearing Loss litigation, have you had any other

6    meetings with Mr. Schlemmer that you recall?

7      A.    Not meetings with Mr. Schlemmer, but I

8    have been at meetings that Mr. Schlemmer also

9    attended, if I may make that distinction.  The next

10   one I recall was sometime in the 1993, '94 period

11   in Dallas, Texas.  It was a meeting of the

12   oversight committee in connection with the Lone

13   Star Steel litigation and I believe Mr. Schlemmer

14   attended that meeting, as well.

15     Q.    And have you had any other occasions where

16   you have been present at the same meeting with Mr.

17   Schlemmer following that?

18     A.    The only other meeting with Mr. Schlemmer

19   that I can recall was at our offices, I believe, in

20   1999.

21     Q.    With respect to the -- Actually, we'll

22   return to this subject matter of these meetings,

23   but with respect to Mr. Malter's deposition, do you

24   recall the subject matter of the parts of that

1   other three defendants that were participating with

2   Black and Decker in the shared counsel arrangement

3   had outside counsel other than their Mississippi

4   counsel, a number of the other defendants,

5   particularly the defendants for the larger

6   companies, the larger companies had outside

7   separate counsel in addition to their local

8   Mississippi counsel actively involved in the cases.

9       Q.   I'm now referring back again to the packet

10  that we had marked as the Exhibit Number 3 and

11  picking up  --

12              MR. PIROZZOLO:  What page?

13              MR. DUFFY:  Basically, where we had

14  left off at Bates number 99-1173 and continuing on

15  99-1175.  I'm actually going to go next to the next

16  document in order, beginning at 99-1176.  It's the

17  September 29, 1994 letter to Ms. Brady at Liberty

18  Mutual from Gary Duvall and it indicates a cc. to

19  you.  Do you recall this letter?

20      A.   No.  I see my name as a cc. and I'm sure I

21  received it in the normal course.

22      Q.   In the second paragraph on the first page

23  it indicates, "The 27% under the cost sharing

24  agreement proposed by the insurance carriers which

1    was to be assessed to Black & Decker has now been

2    confirmed to be the responsibility of Liberty

3    Mutual results in the following legal fees being

4    owed to each of the above firms," and then it goes

5    on.   Do you know what the cost sharing agreement

6    proposed there is referring to?

7        A.   Well, as I said before in response to a

8    similar question earlier, there was a lot of

9    discussion and correspondence back and forth among

10   Black & Decker's carriers about this litigation and

11   how they would allocate among themselves the costs

12   and I don't believe that a final agreement was ever

13   reached.

14       Q.   Did you have any participation in those

15   discussions?

16       A.   No.

17       Q.   Did you have any participation in any

18   discussions regarding cost sharing in the

19   Mississippi Hearing Loss litigation this letter

20   referencing the Arkansas Hearing Loss litigation?

21       A.   Without reference to this letter?

22       Q.   Yes, sir.

23       A.   Did I have discussions about?

24       Q.   Cost sharing concerning the Mississippi

 1   Hearing Loss litigation.

 2       A.    I'm not sure now about what you mean by

 3   cost sharing.  Cost sharing of Black & Decker's

 4   costs among its carriers, among the joint defense

 5   fund or among the shared counsel arrangement?  It's

 6   confusing and I don't want the record to be

 7   confused.

 8       Q.    Okay.  Right now I'm referring to not the

 9   cost sharing, the joint defense cost sharing, but

10   I'm referring to the cost sharing among Black &

11   Decker's insurance carriers and potentially also

12   including Black & Decker in the cost sharing

13   arrangement.

14               MR. PIROZZOLO:  Can I ask you to

15   just frame the question, please?

16               MR. DUFFY:  I'm framing it.

17               MR. PIROZZOLO:  Okay.  Frame one

18   question.  You just told him what you were talking

19   about.  Just frame a question, I'd appreciate it,

20   so the record will be clear.

21               MR. DUFFY:  I'm trying to frame the

22   question, Jack.

23               MR. PIROZZOLO:  Okay, go ahead.

24               MR. DUFFY:  You know when I finish a

1   question, you can interpose an objection if you

2   have a problem with it, but --

3           MR. PIROZZOLO:  Okay.

4       Q.   The issue is and the question is with

5   respect to the Mississippi Hearing Loss litigation

6   did you participate in any discussions regarding

7   cost sharing for the cost of that litigation that

8   would be allocated to Black & Decker under the

9   joint defense agreement, did you have any

10  discussions concerning, by the Liberty Mutual or

11  Black & Decker's other carriers and potentially

12  Black & Decker itself would pay the cost of that

13  joint defense?

14          MR. PIROZZOLO:  Objection.

15      A.   I don't recall any such discussion and I

16  did not become involved in any discussion with

17  Black & Decker's carriers with respect to cost

18  sharing among them or Black & Decker in the

19  Mississippi Hearing Loss litigation.

20      Q.   Earlier we discussed the, your opinion

21  with respect to the reasonableness of the

22  attorneys' fees charged by local counsel in the

23  long-term exposure claims.  With respect to the

24  Arkansas Hearing Loss litigation matter do you know